# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SCION DWIGHT MANAGING MEMBER LLC, an Illinois limited liability company, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 10 C 6118 |
| v. | ) ) | Judge Ronald A. Guzmán |
| DWIGHT LOFTS HOLDINGS, LLC, A Delaware limited liability company, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Scion Dwight Managing Member LLC ("Scion Dwight") has sued defendant Dwight Lofts Holdings, LLC ("DLH") for breach of contract and fiduciary duty. DLH asks the Court to stay this case pursuant to the *Colorado River* doctrine. For the reasons set forth below, the Court denies the motion.

## Facts

On January 22, 2008, Scion Dwight and DLH formed Dwight Lofts LLC ("the Company") to purchase and manage certain rental property in Chicago. (First Am. Compl. ¶¶ 8-11.) Among other things, the Company's Amended LLC Agreement ("Agreement"): (1) makes Scion Dwight the Company's managing member and gives it the absolute right, starting twenty-four months after the rental property is acquired, to sell its interest in the Company to DLH ("Put Right"); (2) gives DLH the absolute right to revoke Scion Dwight's management authority; and (3) sets forth the order in which the proceeds from selling the Company will be distributed to the parties ("Sale Proceeds

Waterfall Provision"). (*Id.* ¶¶ 17-18, 21-29; *id.*, Ex. 1, Agreement §§ 1.1, 4.2, 5.1.1, 5.1.4, 6.4.1, 6.4.2; *id.*, Ex. 2, First Amendment §§ 6.4.1-.4.2.) On July 22, 2008, the Company purchased the property. (*See* First Am. Compl. ¶¶ 21-22.)

In early 2010, the Company began negotiating a long-term lease of the property with Columbia College. (*Id.* ¶ 36.) Before the lease was finalized, DLH terminated Scion Dwight's management rights and offered to let Scion Dwight exercise the Put Right early to liquidate its interest in the Company. (*Id.* ¶¶ 30-34, 41.) Scion Dwight said it would do interested in doing so, but not until the lease with Columbia was in place. (*Id.* ¶ 42.)

On April 7, 2010, Columbia College signed a lease for five academic years starting August 2010, but gave the Company the right to rent the property to others during the summer when school was not in session. (*Id.* ¶¶ 37-40.)

Thereafter, Scion Dwight prepared to exercise its Put Right by analyzing the property's fair market value. (*Id.* ¶ 43.) It concluded the property was worth about $96.5 million, a figure based in part on projected summer rental revenues of $958,000.000 each year. (*Id.* ¶¶ 44-48.) In May 2010, DLH rejected Scion Dwight's valuation and withdrew its offer to let Scion Dwight exercise the Put Right early. (*Id.* ¶ 54.)

Over the next few weeks, Scion Dwight urged DLH to make meaningful efforts to secure summer rentals because that revenue would greatly impact the value of Scion Dwight's interest in the Company. (*Id.* ¶¶ 55-58.) DLH ignored these requests. (*Id.* ¶¶ 59-71.)

On July 22, 2010, Scion Dwight exercised its Put Right and, in accordance with the Agreement, the parties mutually appointed an appraiser to determine the property's fair market value

2

(*Id.* ¶¶ 72-73.) DLH falsely told the appraiser that the prospects for obtaining summer rentals were dim, and thus such rentals were not likely to generate much revenue in the future. (*Id.* ¶¶ 74-77.)

The appraiser accepted DLH's representations and projected summer occupancy rates of ten and twenty percent for 2011 and 2012, respectively, and fifty percent for each lease year thereafter. (*Id.* ¶ 79.) The appraiser set the property's fair market value at $97.5 million. (*Id.* ¶ 78.)

On September 20, 2010, DLH told Scion Dwight that there was a mistake in the Sale Proceeds Waterfall provision of the Agreement and two others like it that the parties had signed in connection with similar projects. (*See* First Am. Compl., Ex. 6, Letter from Bellinger to Bronstein of 9/20/10.) DLH said the parties had agreed that Scion Dwight would be paid a "promote percentage," or additional return, when the Company was liquidated but only after DLH's capital investment had been repaid. (*Id.*) The Agreement, however, states that the promote percentage will be paid first. (*Id.*; *see* First Am Compl., Ex. A, Agreement § 4.2.) DLH asked Scion Dwight to amend the agreements to reflect the parties' true intent. (*Id.*, Ex. 6, Letter from Bellinger to Bronstein of 9/20/10.)

In response, Scion Dwight filed this suit, alleging that DLH had anticipatorily breached the Agreement. Subsequently, Scion Dwight added a claim for breach of fiduciary duty, alleging that DLH deliberately failed to obtain summer rentals to decrease the property's value, and thus Scion Dwight's payout.

Immediately after Scion Dwight filed this suit, DLH filed suit in Delaware state court asking for reformation of the Sale Proceeds Waterfall provision in the three agreements executed by ht parties or their affiliates. (*See* Barnett Aff. Supp. Mot. Stay, Ex. 1, *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member LLC*, No. 5843 (Del. Ch. Ct.) (Compl).)

## Discussion

DLH asks the Court to stay this case pursuant to the doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). A stay is appropriate under that doctrine only if the state suit is parallel to the federal suit and there are "exceptional circumstances" that warrant abstention. *Clark v. Lacy* 376 F.3d 682, 685 (7th Cir. 2004); *see Sverdrup Corp. v. Edwardsville Cmt'y Unit Sch. Dist. No. 7*, 125 F.3d 546, 549 (7th Cir. 1997) (noting that "federal courts have a virtually unflagging obligation to exercise the jurisdiction conferred on them" and "[o]nly the clearest of justifications warrants abstention in favor of a concurrent state proceeding" (quotations omitted)). Two suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two different courts. *Clark*, 376 F.3d at 686. The cases need not be entirely symmetrical to be parallel, but there should be "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Id.* (quotation omitted).

In the Delaware suit, DLH and its affiliates are suing Scion Dwight and its affiliates for reformation of the Sale Proceeds Waterfall Provision in three LLC agreements. (Barnett Aff. Supp. Mot. Stay, Ex. 1, *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member LLC*, No. 5843 (Del. Ch. Ct.) (Compl).) In this case, Scion Dwight alleges that DLH anticipatorily breached that provision and, by deliberately suppressing the fair market value of the Company's property, its fiduciary duty to Scion Dwight. Though Scion Dwight has not asserted the fiduciary duty claim in the Delaware suit, DLH says it will have to do so because the claim is a compulsory counterclaim under Delaware law. Because the claims in this suit are or will be before the Delaware court, DLH argues that the two suits parallel.

4

The fiduciary duty claim is a compulsory counterclaim under Delaware law only "if it arises out of the transaction or occurrence that is the subject matter of [DLH's] claim" and was not "the subject of another pending action" when the Delaware suit was filed. Del. Super. Ct. R. Civ. P. 13(a). Scion Dwight filed this suit before DLH filed suit in Delaware, but it did not assert the fiduciary duty claim until after the state suit had been filed. Thus, it is not clear whether the fiduciary duty claim, which Scion Dwight could have alleged from the start, was "the subject" of this suit when it was filed or subsequently become its subject when Scion Dwight actually asserted the claim.

DLH contends, without citation to authority, that it is the latter. Even if that were true, an issue the Court does not decide, the fact that claims raised in this suit are compulsory counterclaims in the Delaware suit would not make the two suits parallel:

> [I]t could be argued that a claim brought in a federal action based on a claim which would be a compulsory counterclaim in a pending foreign action might make the federal action "parallel" to the foreign action, because the federal claim would be "disposed of" in the foreign action in one way or another. (That is, it would either be asserted as a counterclaim in the foreign action and decided there, or lost if not asserted before the conclusion of the foreign action. Either way, conclusion of the foreign litigation would leave nothing left for the federal court to decide.) However, the appellees point to no authority (nor have we found any) suggesting that a federal action is parallel to a state or foreign action for *Colorado River* abstention purposes when the claim upon which the federal action is based is pleadable as a compulsory counterclaim in the other action.

*AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 522 (7th Cir. 2001); *see TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 593 (7th Cir. 2005) (same). Because the Delaware suit is not parallel to this one, the Court has no basis for granting DLH's motion to stay. *TruServ*, 419 F.3d 592 ("[I]f . . . two cases are not parallel, the *Colorado River* doctrine does not apply.")

**Conclusion**

For the reasons set forth above, the Court denies defendant's motion to stay [doc. no. 12].

**SO ORDERED.**                                    **ENTERED:**

**May 24, 2011**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**